IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ELAINE Q. WONGUS,

    *Plaintiff*,

v.

ROBERT McDONALD, SECRETARY,
Department of Veterans Affairs,

    *Defendant*.

Civil Action No. ELH-15-2950

**MEMORANDUM OPINION**

Elaine Q Wongus, the self-represented plaintiff, initiated this employment discrimination case against Robert McDonald, Secretary of the United States Department of Veterans Affairs ("VA" or "Department"), defendant, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. §§ 621, *et seq*. ECF 1. She has twice amended her suit. *See* ECF 5 (First Amended Complaint); ECF 13 (Second Amended Complaint). Plaintiff also submitted exhibits with the original Complaint and the Second Amended Complaint. *See, e.g.*, ECF 13-1 to ECF 13-8.

Plaintiff is an African American woman who is over the age of forty. *See* ECF 13 at 1. According to an appeal form that plaintiff submitted to the Merit Systems Protection Board ("MSPB"), plaintiff began working for the VA in December 2006 (*see* ECF 16-8 at 2), where she remains employed. ECF 18 at 1. At all relevant times, Wongus worked as a Health System Specialist for the Department at its medical center in Perry Point, Maryland. *See* ECF 16-2 at 2

("Complaint of Employment Discrimination");[1] ECF 18-2 at 2 (EEOC Hearing Request Form).

Wongus contends that, on an unspecified date, she was not hired "with the Anesthesia

Department as Management Analyst"; that she was not promoted on August 10, 2010;[2] and that

she suffered "defamation of character, reprisal, retaliation, bullying, hostile working

environment, prohibit [sic] personnel practice, harassment, and, intimidation."   ECF 13 at 2

(emphasis omitted).

In her suit, Wongus states that on February 13, 2012, she filed charges of discrimination

with the Equal Employment Opportunity Commission ("EEOC"); the MSPB; and her Union.

*Id.* ¶ 9.[3]   She also claimed that she received a right to sue letter on August 29, 2015.  *Id.* ¶ 10.

Plaintiff also attached to her suit a copy of the "Decision" from the EEOC's Office of Federal

Operations ("OFO"), dated August 13, 2015.  ECF 1-1.

Defendant has moved to dismiss the Second Amended Complaint, pursuant to Fed. R.

Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).   ECF 16.   The motion is accompanied by a

memorandum of law (ECF 16-1) (collectively, the "Motion"), and various exhibits.  ECF 16-2

---

[1] Plaintiff submitted the Complaint of Employment Discrimination to the VA.  As discussed, *infra*, I may consider certain exhibits submitted with the suit, with defendant's motion to dismiss, and with the plaintiff's opposition.  *See* ECF 16-2 through ECF 16-11.

[2] Defendant has indicated that the date was August <u>12</u>, 2010.  *See* ECF 16-1 at 2.  The discrepancy is not material.

[3] It appears that plaintiff filed a Complaint of Employment Discrimination with the Office of Resolution Management of the VA on May 23, 2012, not February 13, 2012.  *See* ECF 16-2 at 2.  Plaintiff may have been referring to her date of initial contact with the VA's Office of Resolution Management.  On plaintiff's form Complaint of Employment Discrimination, she indicated that the contact occurred on February 13, 2012.  *Id*.

Moreover, it appears that plaintiff did not file a charge of discrimination directly with either the MSPB or her Union.  *See* ECF 16-7; ECF 16-8.  Rather, as discussed, *infra*, plaintiff participated in a negotiated grievance resolution process with the VA, which included the participation of her Union (*see* ECF 16-7) and an appeal to the MSPB.  *See* ECF 16-8.  Those events transpired in 2014.  *See* ECF 16-7; ECF 16-8.

through ECF 16-11.  Defendant argues that Wongus failed to exhaust her claims through the administrative process, as required by the applicable statutes.  ECF 16-1 at 10-12.  Further, the Department claims that the suit was untimely filed.  *Id.* at 13-14.  And, defendant contends that, even if Wongus properly exhausted her administrative remedies, she has failed to state a claim. *Id.* at 14-16.  Wongus opposes the Motion (ECF 18, the "Opposition"), supported by exhibits. ECF 18-1 through ECF 18-5.  Defendant has replied.  ECF 19 (the "Reply").

In addition, plaintiff has filed a motion for leave to file a surreply.  ECF 22 (the "Motion for Surreply").  Defendant opposes the Motion for Surreply (ECF 23, the "Response") and plaintiff has replied.  ECF 24.

The Motion and the Motion for Surreply have been fully briefed, and no hearing is necessary to resolve them.  *See* Local Rule 105.6.  The Court is mindful of its obligation to construe liberally the pleadings of a pro se litigant, which are "held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989).  Nevertheless, for the reasons that follow, I shall grant, in part, and deny, in part, the Motion for Surreply, and I shall grant the Motion to Dismiss.

## I.    Factual and Procedural History

The claims in Ms. Wongus's Second Amended Complaint appear to arise from two discrete matters.  One relates to plaintiff's "Complaint of Employment Discrimination" ("EEO Complaint"), filed May 23, 2012, with the Department's Office of Resolution Management ("Office").  ECF 16-2 at 2.  The other concerns plaintiff's suspension and subsequent grievance proceeding.  *See, e.g.*, ECF 16-7.

**A.**

On February 13, 2012, plaintiff initiated contact with an equal employment opportunity ("EEO") counselor.  *See* ECF 16-2 at 4.  Counseling concluded on May 13, 2012.  *Id.*  Plaintiff was mailed a "Notice of Right to File a Discrimination Complaint," which she received on May 17, 2012.  *Id.*  Thereafter, on May 23, 2012, plaintiff filed the EEO Complaint with the Department.  ECF 16-2 at 2.  She listed claims as to three incidents.  As to the first occurrence, on March 5, 2012, plaintiff stated: "Code Orange against manager."[4]  *Id.*  Plaintiff also referred to events of May 16, 2012, and said: "[T]hreaten, Hostile environment, retaliation (going to write me up (PIP) intimidation[)]."  *Id.*  Third, plaintiff asserted a claim as to an occurrence on May 17, 2012: "[T]hreaten, Harass, Hostile environment, Retaliation (I told her that I was sick,) Intimidation (Kathy said, I could not go home)."  *Id.*

On August 14, 2012, the Office issued a "Notice of Partial Acceptance" as to plaintiff's EEO Complaint.  ECF 16-2 at 4-6.  The notice outlined twelve allegations, presumably distilled from plaintiff's EEO Complaint.  *See* ECF 16-2 at 2.

According to the notice, plaintiff asserted that she was "subjected to a hostile work environment based on her race (Black) . . . ."  ECF 16-2 at 4.  The notice recounted numerous events reported by plaintiff to support her claim.  *Id.* at 4-5.  Plaintiff claimed, *inter alia*, that in February 2012, her supervisor, Compliance Officer Kathy McCardell, "yelled at her and said [plaintiff] was not in the union."  ECF 16-2 at 5.  On February 13, 2012, McCardell sent plaintiff an email in which McCardell "accused [plaintiff] of being insubordinate."  *Id.*  McCardell sent an additional email to plaintiff on February 16, 2012, accusing plaintiff of "unacceptable conduct."  *Id.*  Plaintiff also alleged that in March 2012, McCardell "ignored the [plaintiff's]

---

[4] "Code orange" is not defined by the parties in any of the filings.

complaint about a horrible smell in . . . her office." *Id.*  And, on March 2, 2012, McCardell "accused the [plaintiff] of not finishing her audits." *Id.*  McCardell "shouted and banged on the [plaintiff's] office door" on March 5, 2012. *Id.*  In April 2012, McCardell "spoke to [plaintiff] in a condescending manner . . . ." *Id.*  Thereafter, on May 16, 2012, McCardell "threatened to place [plaintiff] on a Performance Improvement Plan" (PIP). *Id.*

Upon review of the allegations, the Office "<u>ACCEPTED</u> for investigation" the claims of harassment, for the reasons it set forth in ECF 16-2 at 5-6 (emphasis in original).  However, two claims were not accepted for investigation by the Office, as they were deemed untimely.  ECF 16-2 at 4.  In particular, plaintiff had stated that, from September 13, 2010 to October 15, 2011, she was "detailed as the Acting Compliance Officer, a higher graded position," but was not compensated at the higher level or promoted to that position. *Id.*  Plaintiff also claimed that on February 13, 2012, she was told that her request for "temporary promotion would not be processed . . . ." *Id.*

On January 29, 2014, the VA and plaintiff, through counsel, filed with the EEOC a document titled "Joint Motion to Dismiss with Prejudice."  ECF 16-3.  It stated:  "The parties, by and through their respective below-signed counsel, hereby jointly move for the dismissal of this EEO complaint in its entirety, with prejudice." *Id.*

**B.**

On October 2, 2013, McCardell, plaintiff's supervisor, issued a Memorandum to Wongus, proposing a five-day suspension, without pay, based on three charges.  ECF 16-4.[5]  The Memorandum stated, *id*. at 2:

---

[5] These charges are distinct from the allegations that plaintiff presented to the VA in May 2012.  However, plaintiff has continually complained about harassment at work.

**CHARGE 1: Failure to Follow Instructions**

**Specification:** On July 3, 2013, you were instructed by your supervisor, Kathy McCardell to correct an excel spreadsheet, which contained errors. You did not make the correction to the excel spreadsheet. You are charged with failure to follow instructions.

**CHARGE 2: Unprofessional Conduct**

**Specification:** On August 2, 2013, your supervisor made an attempt to show you the errors you made on an excel spreadsheet. You became defensive and disrespectful. Your supervisor made an offer for you to attend the Employee Assistance Program. You stated that your supervisor was the one who was going to need the assistance. You are charged with unprofessional conduct.

**CHARGE 3: Absent Without Leave (AWOL)**

**Specification 1:** On August 12, 2013, you were scheduled to work from 7:30 a.m. until 4:30 p.m. You were absent without authorization from your required duty station; you were required to be at your duty station during that period. You are charged absent without leave (AWOL).

**Specification 2:** On August 13, 2012 [sic], you were scheduled to work from 7:30 a.m. until 4:00 p.m. You were absent without authorization from your required duty station; you were required to be at your duty station during that period. You are charged absent without leave (AWOL).[6]

The Memorandum also outlined Wongus's rights in connection with the charges, including her right to contest the charges and to obtain counsel, and she was also provided information about the procedure. *Id.* at 2-3. In addition, Wongus was informed that the final decision would be made by the "Director." *Id.*[7]

On February 21, 2014, Dennis Smith, the Director of the VA Maryland Health Care System, issued to Wongus a "Notice of Decision to Suspend," suspending her for three days, from March 17, 2014 to March 19, 2014. ECF 16-5 at 3-4. In particular, Smith sustained two of

---

[6] It appears that the alleged "AWOL" occurred on August 13, 2013, not August 13, 2012. *See* ECF 16-5 at 3.

[7] As discussed, the reference presumably was to the Director of the VA Maryland Health Care System.

the three charges: "Failure to Follow Instructions" (Charge 1) and "Unprofessional Conduct" (Charge 2). *Id.* The Director stated that, based on plaintiff's oral reply, he "decided to remove the charge of Absent Without Leave," and to reduce the suspension from five days to three days. *Id.* at 3.

On March 13, 2014, the Union filed a "Step 3 Grievance" (the "Grievance") on plaintiff's behalf, challenging her suspension. ECF 16-7.[8] The Grievance disputed both charges cited by the Director in issuing the suspension. *Id.* at 5-7.

As to Charge 1, for failure to follow instructions, the Grievance claimed, *inter alia*, that "the employee was trying to follow what [McCardell] requested in her instructions, but [plaintiff] was unclear as to what [McCardell] was attempting to get her to understand." *Id.* at 5. The Grievance also stated that the Department refused to provide Ms. Wongus with training that she requested. *Id.* at 6. As to the first charge, the Grievance concluded, *id.*: "While Ms. Wongus does not have unfettered right to disregard an order merely because there is substantial reason to believe that the order is not proper, at no time did Ms. Wongus refuse to comply with an order."

With respect to the second charge, the Grievance argued, *inter alia*, that McCardell's assertions were "self-serving." *Id.* at 7. The Grievance also stated that McCardell was "totally disrespectful" to Wongus and that McCardell "yelled at a high voice during the entire meeting" in question. *Id.* According to the Grievance, *id.*: "Ms. Wongus did not act improperly and was simply having a vigorous exchange with her supervisor asking for clarity of instructions."

---

[8] The Department has a collective bargaining agreement with the American Federation of Government Employees ("AFGE") (ECF 16-6), which covers procedures for resolving "any complaint by an employee(s) . . . concerning any matter relating to employment . . . ." *Id.* at 6. The collective bargaining agreement provides that an employee may file an action "under the statutory procedure or the negotiated grievance procedure but not both." *Id.* at 7. The negotiated grievance procedure is discussed, *infra*.

On May 30, 2014, Director Smith sent a letter to the president of plaintiff's Union (AFGE, Local 331) as to the Grievance.  ECF 16-7 at 11-12.  It recounts that on April 9, 2014, the Union and management held a meeting and "mutually agreed to enter into a settlement agreement," thereby resolving the grievance.  *Id.* at 12.  Although the Union and the Department had agreed to a one-day suspension for Wongus, plaintiff refused to sign the settlement agreement.  ECF 16-7 at 13.  As a result, the three-day suspension became the final agency decision.  *Id.* at 13, 14.  On June 23, 2014, plaintiff was notified by email that the Union's executive board voted not to take the case to arbitration.  ECF 16-7 at 15, 16.

Through counsel, on July 2, 2014, Ms. Wongus appealed the Department's decision to the MSPB.  ECF 16-8.  Plaintiff attached a statement to her appeal, dated June 19, 2014.  *Id.* at 6-7.  She wrote, in part, *id.* at 6-7 (emphasis in original):

> . . . I am so afraid for my life that someone will shoot me when I come to work or walk down the hallways without any body armor to protect myself from my supervisor Kathy McCardell and all employees (including Mr. Smith) . . . .
>
> ***
>
> I continue to feel intimidated and my professional career at the Veterans Affairs is coming to an end because of this unbelievable statement by Mr. Dennis H. Smith, Director. Mr. Dennis H. Smith, Director quoted, "It is the employee responsibility to get alone [sic] with the supervisor and not the supervisor responsibility to get alone [sic] with the employee."  I thought slavery was over but Mr. Dennis H. Smith, Director rekindle that term in the 21st century.
>
> * * *
>
> Mr. Dennis H. Smith said I would reduce the suspension to one day.  Mr. Wayne Marion [the Union representative] asked Mr. Dennis H. Smith to place me in another job.
>
> Mr. Dennis H. Smith said she has a choice.  Mrs. Wongus can take the one day suspension or Mrs. Wongus can be placed in another job and keeps the three day suspension.  Mr. Smith quoted, "*Good luck in getting someone to hire her.*"  Then, Mr. Smith quoted, "If you find someone will hire her, let me know and I will lift the freeze on that position."

-8-

* * *

> I want to be moved to another GS position of my choice like Mr. Cord promised
> me that Mr. Dennis H. Smith and him did not uphold, remove all negative
> information including the suspension from my records, and reimbursement me for
> my 3-days.  Mr. Dennis H. Smith has different policies for minority and non-
> minority employees.  (For example, (non-minority) two employees were just
> recently removed from their positions Chief of Staff Executive Assistant, and
> Assistant to the Executive Assistant).  One was given the Neurology Business
> Management GS-13 position; and the other one was given Quality Performance
> Management GS-13 position).

(Emphasis in original).

The MSPB issued its "Initial Decision" on October 27, 2014 (ECF 16-9), dismissing the appeal for lack of jurisdiction.  *Id.* at 3-4.  The Board explained that it "does not have jurisdiction over suspensions of fourteen days or less."  *Id*. at 4.  The Initial Decision noted that, generally, it would become final on December 1, 2014, unless plaintiff filed a petition for review by that date. *Id*. at 5.  It also informed plaintiff how to file such a petition.  *Id.* at 5-8.  In addition, it outlined review by the EEOC and the process for suit in federal court.  *Id.* at 8-9.

On December 30, 2014, plaintiff, through counsel, asked the EEOC to review the MSPB decision.  ECF 16-10 at 2-4.  She asserted: "Hostile Work Environment (Non-Sexual) based on Race (African American/Black)."  *Id*. at 2.  Plaintiff restated many of the allegations that she had previously asserted regarding McCardell's abuse and mistreatment of plaintiff and the hostile work environment.  *Id*. at 2-3.  Plaintiff also alleged that Director Smith stated: "'I do not care if Kathy McCardell is right or wrong, I am going to stand in her corner.'"  *Id*. at 3.  Further, she alleged, *inter alia*, that on several occasions McCardell sent plaintiff to Baltimore "at the last minute," knowing that plaintiff had "assignments due that day."  *Id.*  She also alleged their use of racial epithets.  *Id*.

The EEOC issued its Decision on August 13, 2015 (ECF 16-11), denying plaintiff's petition.  *Id.*  It reasoned that "it has no jurisdiction to review Petitioner's petition."  *Id*. at 3.  The

Decision also stated, *id.* at 4: "You have the right to file a civil action in an appropriate United States District Court, *based on the decision of the Merit Systems Protection Board*, within thirty (30) calendar days of the date that you receive this decision." (Emphasis added).

The Certificate of Mailing attached to the Decision is date-stamped August 13, 2015. *Id.* at 5. The Certificate of Mailing states, *id.*: "[T]he Commission will presume that this decision was received within five (5) calendar days after it was mailed." However, Wongus claims that she did not receive her right to sue letter from the EEOC until August 29, 2015. ECF 13 at 3. Plaintiff filed suit in this Court on September 29, 2015, thirty one days after she claims to have received the Decision. ECF 1.

As noted, plaintiff has twice amended her Complaint. First, she filed an amended complaint on October 20, 2015. ECF 5. Second, with permission of the Court, she again amended on January 29, 2016. ECF 12; ECF 13. The Second Amended Complaint sets forth two causes of action, one under Title VII and the other under the ADEA. *Id.* at 1.

In her suit, plaintiff alleges that, on an unspecified date, the Department refused to hire her "[w]ith the Anesthesia Department as Management Analyst, GRECC as Grant Management, National Compliance as Analyst." ECF 13 at 2. Furthermore, Wongus claims that the Department failed to promote her on August 10, 2010, after she had worked in the position for a year and yet "was not interviewed for the job." *Id.* Wongus also brings the lawsuit for "defamation of character, reprisal, retaliation, bullying, hostile working environment, prohibit personnel practice, **harassment**, and intimidation." *Id.* (emphasis in original).

According to Wongus, all of these actions were based on race and age. *See id.* Moreover, she alleges "discriminatory work practices" and states that "the Director does not want to change Kathy McCardell behavior **by enforcing the policies** (see attachments); and

**harassment and reprisal because I filed a claim against Kathy**." ECF 13 at 2 (emphasis in original). The Second Amended Complaint seeks back pay, reinstatement, monetary damages in the amount of $200,000, costs, attorneys' fees, injunctive relief, and other relief. *Id.* at 3-4; *see* ECF 13-1 at 1-3.

As noted, on March 17, 2016, defendant filed a motion to dismiss (ECF 16) for lack of jurisdiction, pursuant to Rule 12(b)(1), and for failure to state a claim, pursuant to Rule 12(b)(6). According to defendant, the Court lacks subject matter jurisdiction because plaintiff failed to exhaust administrative remedies concerning her Title VII and ADEA claims. ECF 16-1 at 8. Defendant further states that, even if plaintiff exhausted her administrative remedies, the Court cannot consider her claims because they are untimely. *Id*. at 13. Alternatively, the VA maintains that dismissal is required, pursuant to Rule 12(b)(6), because plaintiff has failed to state plausible claims for relief under Title VII and the ADEA. *Id*. at 14-16.

## II. Motion for Surreply

In her Motion for Surreply, plaintiff does not explicitly indicate why a surreply is necessary or appropriate. *See* ECF 22. In opposing the Motion for Surreply, defendant asserts, ECF 23 at 2: "The only issue addressed in defendant's reply memorandum that was not specifically discussed in its moving papers was in response to plaintiff's suggestion that she exhausted her ADEA claims through the ADEA's alternative statutory route . . . ."

Local Rule 105.2(a) provides that a party is not permitted to file a surreply without permission of the court. "Allowing a party to file a sur-reply is within the Court's discretion, *see* Local Rule 105.2(a), but they are generally disfavored." *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015); *see also, e.g., Chubb & Son v. C & C Complete Servs., LLC,* 919 F. Supp. 2d 666, 679 (D. Md. 2013). A surreply may be

permitted when the party opposing the underlying motion "would be unable to contest matters presented to the court for the first time in the [movant's] reply." *Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore*, 22 F. Supp. 3d 519, 529 (D. Md. 2014) (quotations and citations omitted).  Conversely, a surreply is not permitted when the reply merely responds to an issue raised in the opposition to the underlying motion.  *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605–06 (D. Md. 2003).  In that posture, the party had the opportunity to support its arguments in the opposition to the underlying motion.  *Id.* at 606.

Plaintiff's first argument in her proposed Surreply is that she followed the proper procedures for exhausting her administrative remedies under the ADEA and filed a timely action in the district court.  ECF 22 at 3.  In defendant's Motion, defendant argued that plaintiff had failed to exhaust her administrative remedies with respect to her Title VII and ADEA claims. ECF 16 at 11-12.  In her Opposition, plaintiff stated that she was not required to exhaust her administrative remedies with respect to her ADEA claim.  ECF 18 at 6.  In Reply, defendant asserted, for the first time, that plaintiff failed to comply with the notice procedure for filing an ADEA claim in federal court, pursuant to 29 U.S.C. § 633a.  ECF 19 at 2.

Given the complicated nature of the statutory requirements and administrative procedures, it is reasonable to permit plaintiff the opportunity to respond, by way of her Surreply, to defendant's argument regarding the notice requirement of the ADEA, which was discussed by defendant for the first time in the Reply.  *See* ECF 19 at 2; ECF 23 at 2. Accordingly, I shall grant the Motion for Surreply as to Section A of plaintiff's proposed Surreply (ECF 22 at 3-4).

There is no need for the Surreply, however, as to the remaining content.  In plaintiff's second argument, she asserts that, as to the EEO Complaint, she "had no knowledge of what

action the lawyer was taken [sic]."  ECF 22 at 4.  However, defendant raised the voluntary dismissal of the EEO Complaint as a central issue in the Motion.  *See* ECF 16-1 at 10-11.  And, plaintiff previously responded to this argument.  *See* ECF 18 at 6-7.  The language in plaintiff's Opposition is nearly identical to the language she uses in her proposed Surreply.  *See* ECF 18 at 6; ECF 22 at 5.

The same can be said for plaintiff's third argument in her proposed Surreply.  There, plaintiff argues that she exhausted administrative remedies related to her three-day suspension, and that her claims arising from the suspension were timely filed.  ECF 22 at 6-7.  Again, defendant specifically raised these issues in the Motion (ECF 16-1 at 11-14) and plaintiff previously responded to them.  ECF 18 at 7-10.  As to this issue, the text of the proposed Surreply is virtually the same as the text of the Opposition.  *See* ECF 18 at 10; ECF 22 at 6.

Plaintiff's final argument in her Surreply is that she has satisfied the pleading requirements to survive a Rule 12(b)(6) challenge.  ECF 22 at 7-9.  Plaintiff previously responded to this argument in her Opposition.  ECF 18 at 10-11.

In light of the foregoing, I shall grant the Motion for Surreply (ECF 22) with respect to Section A of the proposed Surreply (ECF 22 at 3-4) and I shall deny the Motion for Surreply as to the remainder of the submission.

## III.    Exhaustion

### A.  Title VII Statutory and Regulatory Provisions

Title VII prohibits an employer from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *see Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc).  It also prohibits an employer

from retaliating against an employee because the employee filed a grievance or complaint regarding an employment practice that allegedly violated Title VII's antidiscrimination provision. *See* 42 U.S.C. § 2000e–3(a); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 415 (4th Cir. 2015).

Title VII's prohibitions apply to private sector employees as well as federal employees. *Nielsen v. Hagel*, ___ Fed. App'x ___, 2016 WL 6695786, at *1 (4th Cir. Nov. 15, 2016) (citing 42 U.S.C. § 2000e-16(a)). Before filing suit under Title VII, however, a plaintiff must exhaust administrative remedies.[9] *See Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989) (private sector employees), superseded on other grounds by 42 U.S.C. § 1981(b); *Brown v. General Services Admin.*, 425 U.S. 820, 832 (1976) (federal employees); *see also McCray v. Maryland Dep't of Transportation*, ___ Fed. App'x ___, 2016 WL 6471731, at *2 (4th Cir. Nov. 2, 2016); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300–01 (4th Cir. 2009); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000).

Notably, "[t]he administrative remedies available for federal employees are significantly broader" than those available to employees in the private sector. *Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006) (en banc).[10] And, as a prerequisite to suit under Title VII, plaintiff was obligated to "seek administrative review of her grievance before filing a suit for unlawful discrimination in employment." *Young v. Nat'l Ctr. for Health Serv. Research*, 828 F.2d 235,

---

[9] As discussed, *infra*, a federal employee who is a member of a union may proceed pursuant to a negotiated grievance procedure.

[10] Until Title VII was amended in 1972, it did not protect federal employees. *See* 42 U.S.C. § 2000e(b) (excluding the United States from the definition of "employer"). In 1972, however, Congress amended Title VII to provide that a federal employee who has exhausted his administrative remedies "may file a civil action as provided in section 2000e–5 of this title" against the "head of the department, agency, or unit, as appropriate." 42 U.S.C. § 2000e–16(c); *see Bullock v. Napolitano*, 666 F.3d 281, 283–84 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 190 (2012).

237 (4th Cir. 1987); *see* 42 U.S.C. § 2000e-16(c) (setting forth the conditions under which a federal employee may initiate a civil suit under Title VII).

In general, as the "first step" in pursuing the exhaustion process, *Young*, 828 F.2d at 237, federal employees "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult [an EEO] Counselor [in the employee's federal agency] prior to filing [an agency EEO] complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a); *see also Nielsen,* 2016 WL 6695786, at *1. And, the employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1); *see also Nielsen*, 2016 WL 6695786 at *1; *Verrier v. Sebelius*, CCB-09-402, 2010 WL 1222740, at *8 (D. Md. Mar. 23, 2010).

The EEO counselor must "conduct an initial counseling session, during which the counselor must inform the aggrieved party in writing of his rights and responsibilities, and offer the employee the option of pursuing alternative dispute resolution (ADR)." *Nielsen*, 2016 WL 6695786, at *1 (citing 29 C.F.R. §§ 1614.105(b)(1), (2)). Counseling may lead to the withdrawal of the claim or a settlement agreement between the employee and employer. *See* 29 C.F.R. § 1614.504(a); *Campbell v. Geren*, 353 Fed. App'x 879, 882 (4th Cir. 2009). If the employee chooses to pursue ADR, the EEO counselor must conduct a "final interview" within 90 days of the initial interview. 29 C.F.R. §§ 1614.105(d), (f). At the end of the 90 day period, if the matter is not resolved, "the counselor must issue a written notice of right to file a formal complaint within the agency." *Nielson*, 2016 WL 6695786, at *1 (citing 29 C.F.R. § 1614.105(d)-(f)).

Thereafter, the aggrieved party must file a formal complaint with the agency within 15 days of receipt of notice from the agency.  *See* 29 C.F.R. §§ 1614.105(d), 1614.106(b).[11]

Once the agency takes "final action" on the formal complaint, the aggrieved party may appeal the decision to the EEOC or, within 90 days, file a civil action.  *See* 42 U.S.C. § 2000e-16; 29 C.F.R. §§ 1614.110, 1614.401, 1614.407(a); *see also Nielsen*, 2016 WL 6695786 at *1.  If an employee appeals to the EEOC, the OFO "reviews the record, supplements it if necessary, and then issues a written decision."  *Scott v. Johanns*, 409 F.3d 466, 468 (D.C. Cir. 2005) (citing 29 C.F.R. § 1614.404-05).  A decision by the OFO is considered to be final, "triggering the right to sue."  *Scott*, 409 F.3d at 468 (citing 29 C.F.R. § 1614.405(b)).  The employee must initiate the civil lawsuit "[w]ithin 90 days of receipt of the Commission's final decision on an appeal."  29 C.F.R. §§ 1614.407(a), (c).[12]

An aggrieved party who fails to comply with the applicable administrative procedures has failed to exhaust her administrative remedies and is generally barred from filing suit.  *See, e.g.*, *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013); *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002); *Frank v. England*, 313 F. Supp. 2d 532, 536 (D. Md. 2004) ("Before an employee has standing to pursue a claim against a federal employer under Title VII, he must first exhaust the available administrative remedies by proceeding before the agency charged with the discrimination.").  Failure to comply generally mandates dismissal of a suit.  *Lorenzo v.*

---

[11] Untimely complaints are subject to dismissal, but the 15-day time limit is also subject to "waiver, estoppel, and equitable tolling."  29 C.F.R. § 1614.604(c).

[12] If the agency fails to issue a final decision within 180 days of receipt of the formal complaint, or if the EEOC fails to rule within 180 days of the filing, the aggrieved party may also sue.  29 C.F.R. §§ 1615.407(b), (d).

*Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985)).

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Institution,* 429 F.3d 505, 510 (4th Cir. 2005).   Rather, it "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas*, 711 F.3d at 407 (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).

Moreover, in the Fourth Circuit, Title VII's exhaustion requirement functions as a jurisdictional bar in federal courts where plaintiffs have failed to comply with it.  In *Balas*, 711 F.3d at 406, the Court said: "[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies."

In *Sydnor,* the Fourth Circuit said, 681 F.3d at 594 (internal citations and quotations omitted): "[A]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow.   Instead, so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit." *See also McCray*, 2016 WL 6471731 at *2; *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 669 (4th Cir. 2015); *Calvert Group, Ltd.*, 551 F.3d at 300; *Evans v. Tech. Applications & Servs. Co.*, 80 F.3d 954, 963 (4th Cir. 1996).   As the *Sydnor* Court said, 681 F.3d at 595: "The touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' . . . not precisely the same. . . ."  (citation omitted).

## B.      ADEA Statutory and Regulatory Requirements

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see also Jones*, 551 F.3d at 300. Employees in the private sector must exhaust an administrative process governed by 29 U.S.C. § 623. *Id*. The ADEA also "creates a cause of action for certain[] federal employees over the age of 40 who allege discrimination on the basis of age." *Laber*, 438 F.3d at 430, under 29 U.S.C. § 633a; *see also Baqir v. Principi*, 434 F.3d 733, 744 (4th Cir. 2006). As to federal employees, "the ADEA provides two alternative routes for pursuing a claim of age discrimination." *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5 (1991).

First, "[a]n individual may invoke the EEOC's administrative process and then file a civil action in federal district court if he is not satisfied with his administrative remedies." *Id.* at 5-6 (citing 29 U.S.C. § 633a(b) and (c)). This process is the same as the Title VII administrative process, described earlier. *See* 29 C.F.R. § 1614.105(a). In *Jones*, 551 F.3d at 300-01, the Fourth Circuit said: "Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim. . . . *The same is true of claims made under the ADEA*." (Citing 29 U.S.C. § 626(d)) (emphasis added).[13]

Second, a federal employee complaining of age discrimination "can decide to present the merits of his claim to a federal court in the first instance." *Stevens*, 500 U.S. at 6 (citing 29

---

[13] However, several other appellate courts have determined that a failure to exhaust administrative remedies under the ADEA is not a jurisdictional defect. *See, e.g., Menominee Indian Tribe of Wisc. v. United States*, 614 F.3d 519, 527 (D.C. Cir. 2010); *Spengler v. Worthington Cylinders*, 615 F.3d 481, 489 (6th Cir. 2010); *Tapia-Tapia v. Potter*, 322 F.3d 742, 745 n.4 (1st Cir. 2003).

U.S.C § 633a(d)).  In other words, "[a] federal employee complaining of age discrimination . . . does not have to seek relief from his employing agency or the EEOC at all." *Stevens*, 500 U.S. at 6; *see also Verrier*, 2010 WL 1222740 at *8.  This process, governed by 29 U.S.C. § 633a, is sometimes referred to as the administrative "bypass" option.  *See e.g.*, *Forester v. Chertoff*, 500 F.3d 920, 924 (9th Cir. 2007).

With respect to the "bypass," an aggrieved individual must provide 30-days' notice to the EEOC of the intent to file suit.  29 U.S.C. § 633a(d).  And, under 29 U.S.C. § 633a(d), a plaintiff may only give notice of intent to sue to the EEOC for events that occurred within the preceding 180 days.  The ADEA provides, 29 U.S.C. § 633a(d) (emphasis added):

> When the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced by any individual under this section **until the individual has given the Commission not less than thirty days' notice of an intent to file such action**.  **Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred.**

The parties have not addressed whether an aggrieved employee who begins the administrative process with respect to a claim of age discrimination must then complete that process before filing suit, or may, instead, pursue the "bypass."  Although this issue was presented to the Supreme Court in *Stevens*, the Court did not decide the question because the "government abandoned its position that an administrative exhaustion requirement arose by virtue of the claimant invoking administrative procedures."  *Bankston v. White*, 345 F.3d 768, 774-75 (9th Cir. 2003).  However, in his concurrence and dissent, Justice Stevens wrote, 500 U.S. at 12:

> There is . . . no basis from which to infer that a complainant who has voluntarily sought administrative relief must exhaust all administrative remedies before proceeding to court.  The Equal Employment Opportunity Commission, charged with interpretation of the ADEA, does not read the statute to require exhaustion by federal employees.

Other federal appellate courts have concluded that "a federal employee may bring a lawsuit under the ADEA despite having earlier abandoned EEOC proceedings." *Bankston*, 345 F.3d at 775; *accord Adler v. Espy*, 35 F.3d 263, 265 (7th Cir. 1994).

I shall assume, *arguendo*, that a plaintiff who begins the administrative process of resolving a complaint of age discrimination is not obligated to complete that process in order to file suit under the ADEA.   Nevertheless, under 29 U.S.C. § 633a, to use the "bypass," an aggrieved employee must provide the statutorily required 30-day notice to the EEOC before filing suit.

It is not clear whether failure to comply with the notice requirement of 29 U.S.C. §633a prior to filing suit is a jurisdictional bar to suit under the ADEA or, instead, an affirmative defense.  *See Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003); *see also* 29 U.S.C. § 626(d). Although *Jones*, 551 F.3d 297, is not directly on point, the Fourth Circuit recognized in that case that a court lacks subject matter jurisdiction to consider a complaint by a plaintiff alleging an ADEA claim against a private employer if the plaintiff failed to "wait 60 days after filing federal [an] administrative charge before bringing suit in federal court . . . ."  *Id.* at 300-01 (citing 29 U.S.C. § 626(d)(1) and *Vance v. Whirlpool Corp.*, 707 F.2d 483, 486-89 (4th Cir. 1983)). Arguably, by analogy, *Jones* suggests that the notice requirement might be regarded as jurisdictional.  And, district courts within the Fourth Circuit have treated the notice requirement as jurisdictional.  *See Gaines v. McDonald*, 152 F. Supp. 3d. 464, 468-70 (M.D.N.C. 2015); *Byers v. Napolitano*, 10-CV-60, 2010 WL 3386019, at *1 (W.D.N.C. Aug. 25, 2010).

However, some courts do not regard a plaintiff's failure to provide the thirty days' notice to the EEOC as a jurisdictional defect.  *See, e.g.*, *Forester*, 500 F.3d at 928; *Bohac v. West*, 85 F.3d 306, 311 (7th Cir. 1996); *Lavery v. Marsh*, 918 F.2d 1022, 1027 (1st Cir. 1990).   In

*Forester*, 500 F.3d at 928, the Ninth Circuit said: "We conclude that the 30–day waiting period in 29 U.S.C. § 633a(d) is not jurisdictional in the sense that a district court lacks any authority to grant relief when a complaint is filed prematurely."  Moreover, it regarded the failure to comply with the ADEA's notice requirement as akin to a statute of limitations defense.  *See id.*, 500 F.3d at 925; *see also Chennareddy v. Dodaro*, 698 F. Supp. 2d 1, 12 (D.D.C. 2009), *aff'd in part sub nom. Davis v. Dodaro*, No. 10-5044, 2010 WL 3199827 (D.C. Cir. Aug. 10, 2010); *cf Achagzai v. Broadcasting Bd. of Governors*, 170 F. Supp. 3d 164, 174 (D.D.C. 2016) ("The D.C. Circuit has also repeatedly recognized that the exhaustion defense is similar to a statute of limitations.") (Internal quotation omitted).

According to the Ninth Circuit, various kinds of equitable relief, including tolling, would be available if the defect were considered non-jurisdictional.  *Forester*, 500 F.3d at 929; *see also Bohac*, 85 F.3d at 311 ("Since these administrative time limits are akin to statutes of limitation, Bohac should have been permitted to introduce evidence demonstrating his entitlement to the equitable remedies of tolling, estoppel, or waiver").  However, plaintiff does not request any equitable remedies excusing her failure to comply with the thirty day notice requirement.  *See* ECF 18.  Thus, as the D.C. Circuit said in *Rann*, 346 F.3d at 195, "nothing turns on the characterization . . . ."

In light of *Jones*, I will assume, *arguendo*, that an aggrieved person's failure to comply either with the ADEA's administrative exhaustion procedures or the notice requirement under the bypass constitutes a jurisdictional defect.  Therefore, I will address defendant's Motion under Rule 12(b)(1).  In the alternative, I will assume these defects are not jurisdictional and consider them under Rule 12(b)(6).

## C. Negotiated Grievance Procedure

As an alternative to the statutory avenues pertaining to Title VII and the ADEA,[14] a federal employee who is a member of a union covered under the Federal Service Labor-Management Relations Act ("FSLMRA"),[15] 5 U.S.C. § 7101 *et seq.*, may pursue a negotiated grievance procedure under an applicable collective bargaining agreement. *See* 5 U.S.C. § 2302(b)(1); 5 U.S.C. § 7121(d); *Wilder v. Dep't of Veterans Affairs*, ___ F. Supp. 3d ___, 2016 WL 1322455 at *3-4 (S.D.N.Y. March 31, 2016). Among other things, the FSLMRA "requires any collective-bargaining agreement between a federal agency and a union to provide for a grievance procedure and binding arbitration for the resolution of disputes arising under the agreement." *Cornelius v. Nutt*, 472 U.S. 648, 652 (1985) (citing 5 U.S.C. §§ 7121(a) & (b)).

With the exception of the administrative bypass option under the ADEA (*see* 29 U.S.C. § 633a), discussed earlier, a federal employee who avails himself of the negotiated grievance process must exhaust it before going to court. *See Trent v. Bolger*, 837 F.2d 657, 659 (4th Cir. 1988) (citing *Clayton v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, 451 U.S. 679, 689 (1981)); *see also Williams v. Int'l Longshoremen's Ass'n, Local No. 333*, No. RDB–06–1943, 2007 WL 4268960 (D. Md. Nov. 30, 2007). Exhaustion of the negotiated grievance process may include the referral of the grievance to arbitration and review of the arbitration decision. 5 U.S.C. § 7121. Where an employee proceeds by way of arbitration, she

---

[14] As noted, the ADEA's bypass procedure is also created by statute. *See* 29 U.S.C. § 633a. However, cases pertaining to the negotiated grievance process often refer to the administrative process as the "statutory" process. *See* 29 C.F.R. § 1614.105(a).

[15] The FSLMRA is contained in Title VII of the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.). The CSRA "comprehensively overhauled the civil service system" and "created a new framework for evaluating adverse personnel actions against [federal employees]." *Lindahl v. Office of Personnel Mgmt.*, 470 U.S. 768, 773-74 (1985).

"may appeal such action to the same extent and in the same manner as if the agency had taken the disciplinary action absent arbitration." *Id*. at § 7121(b)(2)(B).

The final agency decision, or decision of the arbitrator, is appealable to the EEOC or the MSPB.[16] "The MSPB is an independent, quasi-judicial agency of the Executive branch which adjudicates employment disputes." *Williams v. United States Merit Sys. Protection Bd.*, 15 F.3d 46, 48 n.7 (4th Cir. 1994); *see McAdams v. Reno*, 64 F.3d 1137, 1141 (8th Cir. 1995).

The FSLMRA states, in part, in 5 U.S.C. § 7121(d):

> Selection of the negotiated procedure in no manner prejudices the right of an aggrieved employee to request the Merit Systems Protection Board to review the final decision pursuant to section 7702 of this title in the case of any personnel action that could have been appealed to the Board, or, where applicable, to request the Equal Employment Opportunity Commission to review a final decision in any other matter involving a complaint of discrimination of the type prohibited by any law administered by the Equal Employment Opportunity Commission.

In making its determination on an appeal from a negotiated grievance, the MSPB may only consider the allegations raised in the negotiated grievance procedure. *See* 5 C.F.R. § 1201.155(c); *see also Jones v. Merit Systems Protection Bd.*, 589 Fed. App'x 972, 976 (Fed. Cir. 2014) (affirming the MSPB's dismissal of a claim of retaliation because appellant did not raise that claim prior to appealing to the MSPB, and the "governing collective bargaining agreement allowed for claims of discrimination to be raised in the course of a grievance proceeding"). In particular, 5 C.F.R. § 1201.155(c) states:

> (c) Scope of Board review. If the negotiated grievance procedure permits allegations of discrimination, the Board will review only those claims of discrimination that were raised in the negotiated grievance procedure. If the

---

[16] Whether it is appropriate to appeal the final decision of the agency to the MSPB or the EEOC depends on whether the claim of discrimination is considered to be "mixed" or "pure." *See Fernandez v. Chertoff*, 471 F.3d 45, 54 (2d Cir. 2006). In a "pure" discrimination case, an employee who proceeds by way of the negotiated grievance procedure must appeal the agency's decision directly to the EEOC before filing suit. *Id*. In a "mixed" case, the employee must appeal the agency's decision to the MSPB first. *Id*.

negotiated grievance procedure does not permit allegations of discrimination to be raised, the appellant may raise such claims before the Board.

A party who has appealed to the MSPB may also appeal the decision of the MSPB to the EEOC.  5 U.S.C. § 7702(b)(1); *see also* ECF 16-9 at 8-9.  If the EEOC denies the appeal, the party may file a civil lawsuit "[w]ithin 30 days of receipt of notice that the Commission concurs with the decision of the MSPB."  29 C.F.R. § 1614.310(d).

The statutory process was outlined earlier.  Notably, an employee may elect either to pursue the negotiated grievance process or the statutory process, but cannot pursue both. *See* 5 U.S.C. § 7121(d).  And, the election is irrevocable.  *Fernandez v.* Chertoff, 471 F.3d 45, 52 (2d Cir. 2006).  The FSLMRA provides, 5 U.S.C. § 7121(d):

> An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both.  An employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first.

The federal sector EEO regulations appear at 29 C.F.R. part 1614.  Consistent with 5 U.S.C. § 7121(d), 29 C.F.R. § 1614.301(a) addresses the relationship of the EEO process and a negotiated grievance procedure, stating:

> When a person is employed by an agency subject to 5 U.S.C. 7121(d) and is covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure, a person wishing to file a complaint or a grievance on a matter of alleged employment discrimination must elect to raise the matter under either part 1614 or the negotiated grievance procedure, but not both.

An election to proceed under the EEO process "is indicated only by the filing of a written complaint."  29 C.F.R. § 1614.301(a).  The election is not triggered by the "pre-complaint

process," such as the initial EEO counseling stage.  *Id.*; *see also id.* § 1614.105 (detailing the pre-

complaint process).  Similarly, "[a]n election to proceed under a negotiated grievance procedure

is indicated by the filing of a timely written grievance."  *Id.* § 1614.301(a).

In sum, an employee covered by a collective bargaining agreement with an applicable

grievance process may elect one of two options to exhaust administrative remedies, but not both:

(1) she may file a grievance pursuant to her union's negotiated grievance process; or (2) she may

utilize the statutory process.  Notably, the employee may elect either the statutory route or the

grievance process, but the employee may not pursue both remedies. 5 U.S.C. § 7121(d); *see*

*Howard v. Pritzker*, 775 F.3d 430, 405 (D.C. Cir. 2015); *Maddox v. Runyon*, 139 F.3d 1017,

1021 (5th Cir. 1998).  And, as noted, the election "is irrevocable."  *Vinieratos v. United States*

*Dep't of the Air Force*, 939 F.2d 762, 768 (9th Cir. 1991).  In addition, in an ADEA case, a

federal employee may opt to utilize the bypass procedure at any time, provided she complies

with the requirements of 29 U.S.C. § 633a.

## IV.     Standards of Review

### A.  Rule 12(b)(1)

Defendant contends that this Court lacks subject matter jurisdiction because plaintiff

failed to exhaust her administrative remedies as to her Title VII and ADEA claims, and because

plaintiff failed to comply with the ADEA's administrative bypass procedures.  ECF 16-1 at 8.

This challenge is predicated on Fed. R. Civ. P. 12(b)(1).

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of

evidence, the existence of subject matter jurisdiction.  *See Demetres v. East West Const., Inc.*,

776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th

Cir. 1999).  A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one

of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'"  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted) (alteration in original); *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *accord Clear Channel Outdoor, Inc.*, 22 F. Supp. 3d at 524.  In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192.  In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Defendant brings a factual challenge, arguing that Wongus has failed to exhaust her administrative remedies as to her Title VII and ADEA claims.  ECF 16-1 at 10-12.  And, the parties have submitted exhibits that are relevant to the issue of jurisdiction.

Specifically, defendant contends that plaintiff cannot pursue the claims of discrimination alleged in her EEO Complaint of May 23, 2012 (ECF 16-2 at 2) because she voluntarily dismissed that complaint on January 29, 2014, when it was before the EEOC.  ECF 16-1 at 10-11.  Furthermore, defendant argues that plaintiff cannot bring the claims arising out of her three-day suspension because she did not assert claims of race or age discrimination in connection with her underlying grievance.  *Id.* at 11-12.  Moreover, defendant maintains that plaintiff cannot

assert an ADEA claim in this case because she failed to give the EEOC 30 days' notice before filing suit, as required by the ADEA. *Id.* at 13.

## B.  Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Goines v. Valley Cmty, Servs, Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, ___ U.S. ____, 133 S. Ct. 1709 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).  But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, ___ U.S. ____, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th.Cir. 2011), *cert. denied*, ___ U.S. ____, 132 S. Ct. 1960 (2012).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*,

178 F.3d 231, 243 (4th Cir. 1999).   The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them.  *Twombly*, 550 U.S. at 555–56 (2007).   But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)."  *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014).   However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'"  *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman* ).

Under limited exceptions, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).   A court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ." *Goines*, 822 F.3d at 166 (citations omitted); *see U.S. ex rel. Oberg*, 745 F.3d at 136 (quoting *Philips v. Pitt Cty Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

Of relevance here, a court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was

integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted).  To be "integral," a document must be one "that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)).  "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167.  Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

 In my view, the documents that are part of the administrative record of the case, included as exhibits to defendant's Motion (ECF 16-2 through ECF 16-11), and the EEOC hearing request form, included by plaintiff as an exhibit to her Opposition (ECF 18-2), are integral to the Complaint and authentic.  They are integral to the suit because Wongus implicitly relies on them to justify her suit.  *New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir. 1994).  And, Wongus does not dispute their authenticity in any of her filings.  *See* ECF 18; ECF 22.  Consequently, I may consider these documents in resolving defendant's 12(b)(6) motion.  *See, e.g.*, *Scott v. Md. Dep't of Pub. Safety & Corr. Servs.*, No. CCB-14-3695, 2015 WL 5836917, at *3 (D. Md. Oct. 2, 2015) (court may consider a charge of

discrimination attached to a motion to dismiss where the charge is integral to the complaint and where its authenticity is undisputed); *Rhodes v. Montgomery Cnty. Dept. of Corr. & Rehab.*, 2013 W L 791208, at * 6 (D. Md. Mar. 1, 2013) (same); *Betof v. Suburban Hosp., Inc.*, 2012 WL 2564781, at *3 n. 6 (D. Md. June 29, 2012) (same); *White v. Mortgage Dynamics, Inc.*, 528 F. Supp. 2d 576, 579 (D. Md. 2007) (a court may consider a charge of discrimination attached to a motion to dismiss where charge was incorporated by reference, integral to the complaint, and no party objected).

## V.     Discussion

Ms. Wongus appears to bring her claims on the basis of two independent employment matters.   One relates to plaintiff's EEO Complaint, filed with the Department, and the other concerns plaintiff's suspension and subsequent grievance proceeding.   I consider each, in turn.

### A.  Hostile Work Environment, Failure to Hire, and Failure to Promote

As noted, in May 2012 Ms. Wongus filed a formal Complaint of Employment Discrimination with the Department.  ECF 16-2.  She claimed that she was subjected to a hostile work environment, including threats, harassment, retaliation, and intimidation. *See id.* at 2.  But, Wongus did not assert discrimination on the basis of race or age.  ECF 16-2 at 2.  Nevertheless, the Office indicated in its "Partial Acceptance" of the EEO Complaint that plaintiff complained that her discrimination was based on race.  ECF 16-2 at 4-6.[17]  But, the Office never mentioned discrimination on the basis of age. *Id.*

The Department's Office of Resolution Management also considered claims that the Department failed to promote Wongus to a higher graded position and that the Department

---

[17] The Office apparently was aware of claims made by Wongus that are not found in the EEO Complaint (ECF 16-2 at 2) or in the exhibits available to the Court.

refused to compensate her for that work.  *Id.* at 4.  The Department dismissed these claims, however, as untimely.  *Id.*

Defendant argues that dismissal is appropriate under Rule 12(b)(1) because Ms. Wongus failed to exhaust her administrative remedies when, on January 29, 2014, while the matter was before the EEOC, and through counsel, she voluntarily dismissed the EEO Complaint, "in its entirety, with prejudice."  ECF 16-1 at 10-11; *see* ECF 16-3 at 2.  Defendant asserts, ECF 16-1 at 11:

> [P]laintiff may not proceed on any claims based upon her [May 23, 2012] complaint of discrimination. This includes her claim that she was subjected to a hostile work environment based upon her race, as well as her failure to hire claim and failure to promote claim asserted in the Second Amended Complaint, as these were allegations made in her [May] 2012 complaint.

In her Opposition, Wongus argues that she did not know that her attorney had agreed to dismiss her claim with prejudice.  ECF 18 at 6.  She maintains that she "had no knowledge of what action the lawyer was taken [sic]" and that she would have disagreed with dismissal of the complaint.  *Id.*  Wongus also argues that her ADEA claim should not be barred because the ADEA does not require a Notice of Right to Sue from the EEOC.  *Id.* at 6-7.

In Reply, defendant notes that this is the first time that plaintiff has claimed that she did not know about the dismissal.  ECF 19 at 4.  The Department also argues that, even so, a party is generally bound by the actions of her attorney.  *Id.*  As to Wongus's argument that she does not need a notice of right to sue under the ADEA, defendant asserts that the ADEA claim is nevertheless barred because plaintiff did not provide the required notice to the EEOC before she filed her suit.  *Id.* at 2; *see* 29 U.S.C. § 633a(d).

As noted, on January 29, 2014, while the EEO Complaint was before the EEOC, plaintiff dismissed the EEO Complaint, "in its entirety, with prejudice."  *See* ECF 16-3 at 2.  Although

plaintiff could have filed a civil suit after receiving the final decision of the agency and before pursuing her claim with the EEOC, she opted to file an appeal to the EEOC.   29 C.F.R. § 1614.407(a) ("A complainant who has filed an individual complaint . . . is authorized under Title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court . . . [w]ithin 90 days of receipt of the [agency's] final action on an individual or class complaint **if no appeal has been filed**") (emphasis added).   Because plaintiff dismissed her appeal to the EEOC, she never received a final administrative determination from the EEOC, which is required as a part of the exhaustion requirement.   *See* 29 C.F.R. § 1614.407(c); *see also Young*, 828 F.2d at 237; *Laber*, 438 F.3d at 416.[18]

To be sure, Wongus now claims she was unaware of her attorney's dismissal, and did not agree to it.   But, "[c]lients may be held accountable for their attorney's acts and omissions." *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 381 (1993).   "In our system of justice, clients are bound by their counsel's knowledge and actions. Our courts could not process cases otherwise."   *Neal v. Xerox Corp.*, 991 F. Supp. 494, 500 (E.D. Va. 1998).   This is because a party voluntarily chooses her "attorney as [her] representative in the action, and [she] cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962).   As the Supreme Court has said, *id.*: "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'"

Even if plaintiff pursued the administrative bypass option, defendant is correct that plaintiff did not comply with the 30-day notice requirement that is part of the ADEA's

---

[18] The right of an aggrieved employee to file suit if the EEOC does not rule within 180 days is not implicated here.

administrative bypass option. *See* 29 U.S.C. § 633a(d). In her Opposition, plaintiff does not refute the contention that she failed to provide the requisite notice. *See* ECF 18. Defendant also alerted plaintiff in the Reply that "plaintiff does not provide any evidence that she provided the required notice to the EEOC, and if so, on what date." ECF 19 at 2. Yet, even in plaintiff's proposed Surreply, she did not respond to this contention. ECF 22 at 3-4.[19]

In light of plaintiff's dismissal of her EEOC proceeding with respect to her 2012 EEO Complaint, as well as her undisputed failure to satisfy the ADEA's notice requirement, I am satisfied that dismissal as to the Title VII and ADEA claims is warranted, either under Rule 12(b)(1) or Rule 12(b)(6).[20]

## B. Three-Day Suspension

### 1. Scope of Litigation

Ms. Wongus also brought suit challenging the decision of the Department on February 21, 2014, to suspend her for three days. *See* ECF 13; ECF 16-5 at 3-4; ECF 16-7. As noted,

---

[19]In her Surreply, plaintiff refers to a document requesting "a hearing with the Administrative Judge pursuant to 29 C.F.R. §1614.108(g) . . . ." ECF 22 at 3. The document cited by plaintiff is a "Hearing Request Form" for the EEOC, which she filed on May 23, 2012. *See* ECF 18-2 at 2. Although it is not clear that plaintiff claims that this form should satisfy the requirements of 29 U.S.C. § 633a(d), it is clear that it would not. The 30-day requirement of 29 U.S.C. § 633a(d) is to allow the EEOC to "'promptly notify all persons named therein as prospective defendants in the action and take any appropriate action to assure the elimination of any unlawful practice.'" *Rann*, 346 F.3d at 198 (quoting 29 U.S.C. § 633a(d)). This hearing request form clearly does not put either the EEOC or the VA on notice of plaintiff's intent to initiate a lawsuit.

[20] Plaintiff is still employed by the Department, and she seems to allege that the harassment is ongoing. ECF 13 ¶ 8 ("The events I am complaining about took place on the following dates or time period: see attach[ed] time line and still going on today."). Therefore, plaintiff presumably could pursue her rights as to more recent claims of harassment. *See* A. WRIGHT AND C. MILLER, FED. PRACTICE & PROCEDURE, JURISDICTION AND RELATED MATTERS, § 4406 (4th ed.) ("A judgment must possess certain characteristics to qualify for claim preclusion: here, they are identified as requiring a court of 'competent jurisdiction,' a 'final judgment on the merits,' and the absence of "fraud or some other factor invalidating the judgment.").

Wongus is a federal employee covered by a collective-bargaining agreement that included the option of proceeding by way of the negotiated grievance procedure.  ECF 16-5 at 3; ECF 16-6 at 7-10.

The parties do not contest that Wongus opted to challenge her suspension using the negotiated grievance process.  *See* ECF 16-7.  And, with the exception of the bypass procedure under the ADEA, plaintiff was required to exhaust the procedures of the negotiated grievance process.  *See* 5 U.S.C. § 7121(d).

Defendant argues that dismissal under Rule 12(b)(1) is appropriate because Wongus failed to exhaust her administrative remedies in claiming that her three-day suspension was based on age or race.  In this regard, the VA points out that Wongus never alleged discrimination on the basis of race or age during the negotiated grievance process.  ECF 16-1 at 11-12.  Defendant asserts, *id.* at 12 (internal citations omitted) (emphasis added):

> Here, while the grievance states that plaintiff believed that her supervisor created a "toxic environment" and that plaintiff viewed many interactions she had with her supervisor as "threatening, condescending, and humiliating" **nowhere does the grievance state that she believed she was suspended based upon her race or her age, or that she was subjected to a hostile work environment based upon her race or her age**.

According to the VA, it was "not until [Wongus] filed a petition with the EEOC OFO that she first articulated that she was claiming race discrimination, but notably still no mention of age discrimination."  *Id*.  Thus, defendant claims that although plaintiff may have exhausted the administrative remedies available to her for other issues arising out of the suspension, she did not do so for the claims of race and age discrimination.  *Id*. at 11-12.

Plaintiff disputes defendant's claim that she did not assert race and age discrimination in connection with the negotiated grievance procedure.  ECF 18 at 8.  She states, *id.*: "Plaintiff has complaint [sic] about race and age as a factor in my case, even when no one wants to

acknowledge or pursue the issues." Further, plaintiff claims, *id.* at 9: "Plaintiff's complaint falls under these categories age and race discrimination . . . ."

Plaintiff does not cite any text or documents in support of her arguments. However, based on the structure of the negotiated grievance process and the limitations of the MSPB's scope of review, the relevant document in determining the scope of this litigation is the Grievance (ECF 16-7) filed by plaintiff's Union on her behalf on March 13, 2014. *See* 5 C.F.R. § 1201.155(c). It is integral to the suit. Although the Grievance makes various claims that may have been cognizable under different causes of action, it does not contain any reference to race or age discrimination. *See* ECF 16-7.

That Wongus alluded to disparate treatment based on race in an attachment to her MSPB appeal (ECF 16-7 at 7) is not relevant here because, as noted, the MSPB was only able to consider the allegations in the Grievance. Furthermore, that she raised claims of racial discrimination in her EEOC appeal (*see* ECF 16-10 at 2-3) is also of no consequence, as those claims were also made too late and cannot expand the scope of the grievance. *See* ECF 16-11 at 2. Therefore, Wongus did not exhaust her administrative remedies with respect to those issues. Nor are claims asserted in the suit reasonably related to those raised during the administrative process. *See McCray*, 2016 WL 6471731 at *2; *Sydnor*, 681 F.3d at 595.

Moreover, the alternative route for bringing ADEA actions is unavailable to plaintiff. The alleged discrimination occurred on February 21, 2014, when Director Smith issued his "Notice of Decision to Suspend." ECF 16-5 at 3-4. Section 633a of the ADEA requires a plaintiff to provide the EEOC with notice of her intent to sue within 180 days of the alleged unlawful practice. Plaintiff does not allege that she filed the required notice with the EEOC

prior to initiating this lawsuit (*see* ECF 18; ECF 22), nor do the pertinent exhibits reflect that she provided that notice.

Wongus alleges claims of age and race discrimination here that she did not articulate when she pursued her negotiated grievance procedure.  And, plaintiff also failed to notify the EEOC of her intent to sue for age discrimination, as required by the ADEA.  Accordingly, dismissal is appropriate as to the claims pertaining to plaintiff's three-day suspension, either under Rule 12(b)(1) or Rule 12(b)(6).

### 2. Plaintiff's Suit is Untimely

Under 29 C.F.R. § 1614.310(d), a plaintiff must file suit within 30 days of receipt of a notice of right to sue.  Defendant argues that, even if Ms. Wongus exhausted her administrative remedies with respect to the claims of race and age discrimination arising out of her three-day suspension, the claims would nevertheless be barred as untimely.  ECF 16-1 at 13-14.  Although defendant appears to raise this claim under Rule 12(b)(1), issues regarding the 30-day filing requirement are evaluated, in the Fourth Circuit, under Rule 12(b)(6).  *Fulmore v. City of Greensboro*, 834 F. Supp. 2d 396 (M.D.N.C. 2011) (citing *Jones*, 551 F.3d 297 at 300 n.2; *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982)).  This is because the timely filing requirement is "like a statute of limitations, . . . subject to waiver, estoppel, and equitable tolling."  *Zipes*, 455 U.S. at 393.

Defendant asserts that the "EEOC OFO mailed its Decision to plaintiff and her attorney on August 13, 2015."  *Id*.; *see* ECF 16-11 at 5.  But, Wongus did not file her Complaint until September 29, 2015.  ECF 1.  Using the Commission's presumption that the Decision would have been received within five days (ECF 16-11 at 5), defendant claims that the civil suit was filed at least ten days late.  And, even if, as plaintiff asserts in her suit, it took the EEOC's notice

until August 29, 2015, to reach plaintiff (ECF 13 ¶ 10), defendant contends that the suit was still untimely.  *See* 29 C.F.R. § 1614.310(d).

In plaintiff's Second Amended Complaint (ECF 13 ¶ 10), she expressly claims that she received the EEOC's Decision on August 29, 2015.  And, the docket reflects that Wongus filed suit on September 29, 2015, which is thirty-one days after plaintiff claims she received the Decision.  ECF 1.  In her Opposition, plaintiff did not respond to defendant's assertions as to the filing, other than to say that she "filed the claim with in [sic] the time frame."  ECF 18 at 10. She also does not provide any basis for the delay in filing her suit, nor does she argue for equitable tolling.  *See id.*  Therefore, dismissal is appropriate under Rule 12(b)(6).

## VI.    Conclusion

For the reasons stated above, I shall GRANT, in part, and DENY, in part, the Motion for Surreply (ECF 22).  And, I shall GRANT the Motion to Dismiss (ECF 16).

An Order follows, consistent with this Memorandum Opinion.


November 23, 2016                                                  /s/
Date                                                  Ellen Lipton Hollander
                                                  United States District Judge